A. B. KLISE LUMBER CO. *v.* EAST JORDAN LUMBER CO.

1. CONTRACTS—SALES—COVENANTS — INDEPENDENT OR SEVERABLE PROVISIONS.

By the provisions of a contract of sale of lumber to defendant at prices and terms named, stipulating that plaintiff should carry the merchandise by boat at rates subject to change after October 1st, defendant to have an option to charter another boat if the parties should fail to agree on rates, the parties entered into a nonseparable contract, which was broken by plaintiff's refusal to carry out the provision as to carriage.

2. SAME.

Unless the parties disagreed as to rates, plaintiff had no right to insist on the buyer's chartering another boat.

3. SAME—CONSTRUCTION—REASONABLE TIME.

And where the parties in their correspondence treated the contract as fixing the time of delivery in the fall, plaintiff's contention that it was sufficient to have delivered the lumber in the spring is not sustainable.

4. SAME.

And plaintiff could not hold defendant upon an offer made by defendant to accept the lumber in the spring, to be held at the risk of plaintiff who refused to accept the proposition and insisted that there was no obligation to deliver the merchandise after October first.

Error to Charlevoix; Mayne, J. Submitted June 8, 1911. (Docket No. 20.) Decided July 5, 1911.

Assumpsit by the A. B. Klise Lumber Company against the East Jordan Lumber Company on a contract of sale of lumber. A judgment for defendant on a verdict directed by the court is reviewed by plaintiff on writ of error. Affirmed.

*R. W. Kane*, for appellant.

, *Nicholas & Nicholas*, for appellee.

The parties to this suit made the contract following:

"STURGEON BAY, MICH., Jan. 8, 1907.

"The A. B. Klise Lumber Company of Sturgeon Bay, Emmet county, Mich., have, on the 8th day of January, 1907, sold to the East Jordan Lumber Co., of East Jordan, Charlevoix county, Mich., their cut of hemlock for the season of 1907, estimated at two million, at the following prices:

"Piece stuff merchantable, 10, 12, 14, 16, foot lengths, $15.00;

"Piece stuff merchantable, 18 foot lengths, 16.00;

"Piece stuff merchantable, 20 foot lengths, 17.00;

"Boards not more than necessary for sizing, Nos. 1 and 2, 16.00;

"All culls from the above lumber, 10.00.

"These prices are F. O. B. rail of vessel Sturgeon Bay, Mich.

"Terms: Sixty days net, or 2 per cent. in ten days from date of invoice. To be inspected at shipping point by competent inspector mutually agreed upon, each paying one-half inspection fees. Lumber to be cut into multiples of four inch as far as consistent with economical manufacture, but not to make a specialty of cutting 2-4. Our boat to carry this lumber to Lake Michigan points at $1.50 and Cleveland, Ohio, or points this side at $2.00, these prices subject to change after Oct. 1, 1907. If price cannot be arrived at, the East Jordan Lumber Co. may charter other boats.

"Yours truly,
"A. B. KLISE LUMBER CO.
"A. B. KLISE, Pres. A. B. K.

"Accepted East Jordan Lumber Co.,
"Per W. P. PORTER."

The season's cut of lumber was finished about October 1st. Four cargoes of lumber were delivered, carried in plaintiff's boat. A cargo for the boat was from 300,000 to 340,000 feet of lumber. On October 23d there remained undelivered 184,500 feet, concerning which the controversy arises. Plaintiff wrote defendant that it expected to deliver it in Cleveland early in November. Later, November 1st, plaintiff wrote defendant that the vessel had been delayed and had so much work that it would be impossi-

ble to deliver the lumber that year, expressing a willingness to put it "over the rail" at any time, and offering to carry it over at defendant's risk, and freight it not later than the second cargo in the spring, putting with it enough other lumber at contract prices to make a cargo. To this defendant sent the following reply:

> "EAST JORDAN, MICH., Nov. 2nd, 1907.
>
> "A. B. KLISE LUMBER CO.,
> "Sturgeon Bay, Mich.
>
> "*Gentlemen:*
>
> "Replying to yours of the 1st inst., we note you have 200 M. feet of hemlock on hand, and that the 'Gill' cannot carry this this fall. After receiving your letter of October 23rd, in which you stated that the 'Gill' would take this to Cleveland some time in November, we advised the Foote Lumber Company of this accordingly. It would no doubt be impossible for them to ship this small quantity now, and it would, we think, be better to cancel the balance of the order.
>
> "Trusting this will be satisfactory, we are,
> "Yours truly,
> "EAST JORDAN LUMBER CO."

Plaintiff refused to cancel the contract as to the balance of the lumber. Defendant replied that if plaintiff would not deliver the lumber, and wished to carry it until spring at its own risk, and then deliver it, such a course would be satisfactory; otherwise, it wished the balance of order canceled. This proposal the plaintiff refused. "If you wish to leave it here until spring," plaintiff wrote, "all right; but you must distinctly understand that it is your property." This on November 11th. On November 20th, plaintiff wrote defendant:

> "By reference to contract you will find that our freight agreement expired October 1st. Now, we cannot deliver a part cargo, and we do not care to cancel order. To put the matter very plainly, it is up to you to either freight the lumber or take enough more to make a cargo for the 'Gill.'"

Still later, on January 8, 1908, plaintiff wrote:

"Neither were we to deliver after 1st of Oct., unless price was agreed upon. We did, however, deliver one load, and we are not altogether sure but that we are entitled to collect extra freight on this."

December 12, 1907, plaintiff wrote: "The following stock has been cut on your contract and remains in pile here. We expect to deliver it early in the spring"—with a statement of the quantity. Defendant, claiming to have resold the lumber, advised plaintiff it would consult its vendee, and, if it would take the lumber in the spring, would so advise plaintiff; if it would not accept it in the spring, plaintiff might consider the order canceled. Later, it notified plaintiff that its customer would not take the lumber in the spring.

Plaintiff declared upon the common counts in assumpsit and in a special count set up the contract, alleging performance on its part and the failure and neglect of defendant to join it in inspecting the lumber, failure to provide a proper boat, or vessel, upon the rail of which plaintiff could deliver the lumber, refusal to pay plaintiff for the lumber. Defendant pleaded the general issue, the cause was tried, defendant introduced no testimony, and a verdict for defendant was directed. This direction is the ground of the single assignment of error. The contentions of plaintiff (appellant) are—

(1) That defendant breached the contract (*a*) by refusing to send a boat for the lumber in 1907, (*b*) by refusing to abide by its offer to allow plaintiff to carry the lumber at its own risk until spring and then freight it for defendant, after said offer had been accepted by plaintiff; (2) the contract fixes no term for completing transportation of the lumber, hence a reasonable time was contemplated, and what was a reasonable time was a question of fact to be determined by the jury; (3) the contract is severable, and breach of the contract to transport the lumber, if there was a breach, did not excuse defendant for refusing to perform the contract of sale; (4) the contract for transportation is not mutual, and therefore might be disre-

garded by either party without incurring liability to the other.

OSTRANDER, C. J. (*after stating the facts*). We construe the writing in question as an offer of plaintiff to sell and to transport lumber. There is no reason for saying that plaintiff would have offered the lumber without the provision for carriage, none that defendant would have purchased the lumber unless plaintiff would transport it. The right of defendant to charter a boat to carry the lumber was subject to a disagreement about carrying charges after October 1st. There was no such disagreement. There appears to have been no reason, except that the cargo was a small one, for refusing to deliver the lumber in question at Cleveland as other cargoes had been delivered. There was a refusal by plaintiff to transport the lumber and a proposal to make some other arrangement. No other arrangement was made.

The contention of the plaintiff that a new arrangement was made and receded from by defendant, if it is important in an action for damages for breach of the original contract, is not supported by the testimony. Plaintiff's letter of December 12th does not purport to be an acceptance of defendant's proposal that the lumber be carried over at the risk and expense of plaintiff and delivered in the spring. And we find no reason for saying that this proposal of defendant was a continuing one. It had been emphatically refused, and after it was made plaintiff had indicated that as it construed the contract it owed no duty to defendant to transport the lumber. Considered as an offer on the part of plaintiff to deliver the lumber in the spring, it was refused. The contention that there is involved here the question whether delivery of the lumber in the spring would be a reasonable performance of the contract is opposed to the entire tone and spirit of the correspondence which was carried on. The case is disposed of by saying that we do not find any testimony tending to prove a breach by defendant of the contract sued upon.

On the contrary, the testimony tends to prove nonperformance by the plaintiff.

It follows that the judgment ought to be affirmed. It is so ordered.

BIRD, HOOKER, MOORE, and MCALVAY, JJ., concurred.